# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 19-cr-01787-BAS-5 |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT** |
| WILLIAM WHITENACK, | **(ECF No. 2031)** |
| Defendant. | |

On July 25, 2021, this Court sentenced Mr. Whitenack to 120 months in custody, concurrent on both counts, after his guilty plea to conspiracy to distribute methamphetamine and conspiracy to launder money. (ECF No. 1675.) Mr. Whitenack now moves for compassionate release because of the COVID-19 pandemic. (ECF No. 2031.) The Government opposes. (ECF No. 2037.) For the reasons stated below, the Court **DENIES** the Motion.

I.      BACKGROUND

Mr. Whitenack is 49 years old. He was a leader in a network involving 41 co-conspirators distributing multi-kilogram quantities of methamphetamine, heroin, and gamma-hydroxybutyrate ("GHB") throughout the United States and the United Arab Emirates. (Presentence Report ("PSR") ¶¶ 5, 20, ECF No. 527.) He "is estimated to have distributed up to fifty pounds of methamphetamine per week." (PSR ¶ 20.)

Mr. Whitenack is a career offender. He has three prior felony convictions for narcotics sales and one pending charge for the same for which a bench warrant is still outstanding. (PSR ¶¶ 46–55.) He also has three prior burglary convictions, a DUI conviction, and numerous prior arrests. (*Id.*) At the time he was interviewed by the Probation Department, Mr. Whitenack admitted he had a serious drug abuse issue and would welcome treatment. (PSR ¶¶ 76–87.) Mr. Whitenack "was adamant that he did not want to be released from custody without the tools to abstain from drug use." (PSR ¶ 80.) The Probation Department recommended that Mr. Whitenack be sentenced to 240 months in custody. (PSR ¶ 120.) The Court, however, sentenced Mr. Whitenack to half that amount—120 months concurrent on each count. (ECF No. 1675.)

Mr. Whitenack brings this Motion arguing that the COVID-19 pandemic, along with the cruel and unusual conditions at FCI Sheridan where he is being held, all warrant his release. (ECF No. 2031.) The Government points out that Mr. Whitenack received a vaccination against COVID-19 in October 2021, and the booster shot for the same in October 2022. (ECF No. 2037).

Mr. Whitenack claims that he submitted a request for compassionate release to the Warden at FCI Sheridan. The Government argues the request he attaches is unsigned and there is no proof that it was ever sent or received by the Bureau of Prisons ("BOP"). The Government says the BOP's records do not reflect any request for compassionate release from Mr. Whitenack.

II. **ANALYSIS**

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

Before filing such a motion, the defendant must first petition the BOP for compassionate release. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) ("[Section] 3582(c)(1)(A)'s administrative exhaustion

requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked."). A court may grant the defendant's motion for a modification in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* "Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 532 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.*

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020).

Unfortunately, Congress provided no statutory definition of "extraordinary and compelling reasons" and instead delegated that responsibility to the U.S Sentencing Commission. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). Due to vacancies in the Sentencing Commission, the Commission has been unable to update its definition of "extraordinary and compelling reasons" following passage of the First Step Act that amended § 3582(c)(1)(A). *Id.* Nonetheless, the Sentencing Commission's original policy statements, although not binding, may inform the district court's decision as to whether certain conditions are extraordinary and compelling. *Id.*

The Government argues Mr. Whitenack's motion is deficient in three regards. First, he fails to demonstrate that he has exhausted his administrative remedies. Second, he fails to show "extraordinary and compelling reasons" for granting the motion. And third, he fails to show that the factors under § 3553(a) justify his immediate release. The Court will address each argument below.

### A.  Exhaustion

Although the Government argues Mr. Whitenack's proof of exhaustion is insufficient because it lacks a signature and proof that it was submitted to the BOP, it is the Government's burden to prove the lack of exhaustion. *See United States v. Heffington*, 476 F. Supp. 3d 1042, 1047 (E.D. Cal. 2020) ("[T]he failure to exhaust administrative remedies is an affirmative defense in which the party opposing the granting of relief bears the burden of proof.") (citing *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (providing in the prisoner civil rights context, the ultimate burden of proof to show the availability of an administrative remedy and the failure to exhaust that administrative remedy remains with the government)).

The Government posits that the BOP never received any request for compassionate relief from Mr. Whitenack. However, the Government provides no evidence supporting this claim. Since the Government fails to meet its burden of proof in this regard, the Court turns to the substantive issues.

### B.  Extraordinary and Compelling Reasons

Since vaccinations have become widespread in the BOP, courts have consistently refused compassionate release requests based on the threat of COVID-19 from inmates or detainees who have been fully vaccinated. *E.g.*, *United States v. Cobarruvias-Pete*, No. 18-cr-4151-CAB, 2021 WL 4819301, at *1 (S.D. Cal. Oct. 15, 2021) (citing cases); *see also United States v. Cortez*, No. CR-18-858-01-PHX-SPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) ("The court cannot conclude, particularly in light of his vaccination, that defendant's current exposure to COVID-19 presents 'extraordinary and compelling reasons.'"); *United States v. Upshaw*, No. 1:14-cr-256-NONE, 2021 WL 2417012, at *2

(E.D. Cal. June 14, 2021) ("[C]ourts in this circuit and others have recognized that the widespread availability of COVID-19 vaccines within BOP facilities has significantly diminished the risk posed to federal prisoners by the virus and in turn lessened the degree to which the risks posed by COVID-19 may tip the scale in favor of compassionate release in cases where prisoners suffer from chronic medical conditions." (citing cases)); *United States v. Hall*, No. 3:18-cr-499-BR, 2021 WL 5566539, at *3 (D. Or. Nov. 29, 2021) (reasoning "[o]ther district courts in the Ninth Circuit and other judges in this District have . . . concluded inmates who have been fully vaccinated . . . have not satisfied the extraordinary and compelling standard" even if they suffer from medical conditions that make them more susceptible upon contracting COVID-19 (citing cases)).

Since Mr. Whitenack is vaccinated, boosted, and young without evidence that COVID-19 would be particularly risky for him, he fails to show that extraordinary and compelling reasons exist for his release. To the extent he argues that the lockdowns due to COVID-19 constitute cruel and unusual punishment, this issue is better addressed in a civil suit, which, according to Mr. Whitenack's motion, is already in process.

To the extent Mr. Whitenack argues that the Court "could not have foreseen the restrictions that would be precipitated by the pandemic" at the time of sentencing, he is incorrect. The Court sentenced Mr. Whitenack in July 2021, well after the initial concern about the pandemic. The Court was well aware of the risks and deprivations facing individuals housed with the BOP and, in fact, the Court sentenced Mr. Whitenack to half the amount of time recommended by Probation.

C. Section 3553(a) Factors

Even if Mr. Whitenack had shown extraordinary and compelling reasons for his release (he does not), the § 3553(a) factors would not support his release. He is a career offender with multiple felony convictions for both drug trafficking and burglary. Past sentences do not seem to have deterred Mr. Whitenack from returning to his life of crime. At this point, the Court must focus on protection of the public from further crimes he might commit.

In addition, Mr. Whitenack himself admitted at the time of sentencing that he should not be released without first receiving drug treatment. He provides no evidence that he has received that drug treatment while in custody. Hopefully, he will be able to participate in treatment as his time in custody draws to a close.

Reducing Mr. Whitenack's sentence would not adequately reflect the seriousness of the offense, particularly given Mr. Whitenack's criminal past, nor would it provide just punishment for the offense.

### III.   CONCLUSION

Mr. Whitenack's motion to reduce his sentence (ECF No. 2031) is **DENIED**. Mr. Whitenack fails to show extraordinary and compelling reasons for the request. Further, the § 3553(a) factors do not support releasing him early.

**IT IS SO ORDERED.**

**DATED: October 10, 2023**

Hon. Cynthia Bashant
United States District Judge